### JOLLY .v BRADY.

(November 7, 1900.)

*Injunction—Restraining     Order—Dissolution—Bond—Liquor Selling—Damages.*

> When it would be difficult and impracticable to ascertain actual
>      damages, a restraining order ought to be continued until the
>      final hearing.

DOUGLAS, J., dissenting.

MOTION by plaintiffs, B. F. Jolly and W. E. Jolly, to continue a restraining order issued against J. A. Brady, to the hearing, heard by Judge *H. R. Starbuck,* at Fall Term, 1900, of PITT Superior Court.    Order vacated and set aside. From this judgment the plaintiff appealed.

*Jas. L. Flemming* and *Skinner & Whidbee,* for plaintiff.
*Jarvis & Blow,* for defendant.

FAIRCLOTH, C. J.    It appears from the complaint and replication that the defendant had leased his store, cornering on Fourth and Evans streets, in the town of Greenville, to one Burnett, for retailing liquor; that Burnett sold his liquor business to B. F. Jolly, one of the plaintiffs, who subse-

quently sold out his business to W. E. Jolly, the other plain-
tiff; that on or about January 3, 1900, the defendant agreed
with plaintiffs that, if they would purchase the stock of said
Burnett and his interest in the lease, together with the bar
fixtures in said store-room, the plaintiffs should occupy the
premises during the year 1900, at a rental of $30 per month,
and that the defendant during the said term would not en-
gage, directly or indirectly, in the retail of liquor in the town
of Greenville, and that he would not use, or permit anyone
else to use, the room adjacent to said corner room for the pur-
pose of retailing liquor; that, in violation of said contract,
the defendant has engaged in retailing liquor in said adja-
cent room in his building. The defendant denies that he
agreed with plaintiffs, or either of them, at any time, not to
engage in the liquor business in the town of Greenville. The
plaintiffs obtained an order restraining the defendant from
selling liquor in the town, and on the final hearing of the
motion his Honor vacated the restraining order, upon the de-
fendant executing a bond in the sum of $400, conditioned to
pay such costs and damages as the plaintiffs may sustain by
reason of the Court's refusal to continue said order to the
hearing. It now appears that at the hearing of the motion
the only fact in issue is whether the defendant agreed not to
engage in selling liquor in the town during the year 1900.
The defendant offered no proof of his contention, except his
answer as an affidavit. The plaintiffs filed their affidavits
in support of their allegation. They also filed an affidavit
of said W. B. Burnett to the effect that "it was then and there
agreed by J. A. Brady that the plaintiffs should have the use
of said store until January, 1901, and that he (Brady), the
defendant, would not during said year enter the retail liquor
business in the town of Greenville, and that he would not
rent the adjacent room department during the year to anyone

for the retail liquor business;   *   *   *   and that, in his opinion, the stand is very materially damaged by a similar business being run in the adjacent room, and especially so by J. A. Brady, who occupied the corner for ten years or more, the place he is now occupying being separated only by a thin partition." The plaintiffs also filed an affidavit of Edward Forbes, who said he was present with Burnett, the two Jollys and the defendant when the latter contracted as follows: "That the plaintiffs should have and use the corner store—the 'Old Brady Stand'—for and during the year 1900, and that the defendant, J. A. Brady, should not rent or use the other apartments for the retail liquor business during the year 1900, and that he (the said Brady) would not enter or operate, directly or indirectly, any retail liquor business in the town of Greenville during the year 1900;" and, in consideration of these matters, the plaintiffs agreed to pay $30 per month as a rental, which is an exorbitant price for said store; that a similar business in the adjacent room would materially damage the trade of the plaintiffs; and that in frequent subsequent conversations the defendant has admitted the contention of the plaintiffs. None of these witnesses are impeached, and we have to assume that all of them are credible. Whatever the fact may be, the evidence now preponderates in favor of the plaintiffs' allegation.

Granting injunctions is a serious question for the Court. It is a general rule, well settled, that when the injury complained of, actual or apprehended, can be compensated in damages, a court of equity will not interfere. But when the damage can not be reasonably compensated in a court of law, or the injury is irreparable, the Court will stay the injury, by injunctive order, until the parties shall have the main facts determined by jury. In some instances the Court finds serious difficulty in putting the case under either of the

above classes.    In such cases the Court will act upon its general jurisdiction as a court of equity, and administer relief *ex aequo et bono,* according to its own notions of general justice and equity between the parties.    In doing so the Court will consider the facts, such as appear; also the conditions and circumstances surrounding each case.    When the subject-matter is one of public concern, its object being the development of important industries, in which the public are interested, the Court will hesitate to enjoin the parties in such an enterprise.    It refused to do so in *Commissioners of Burke Co. v. Catawba Lumber Co.,* 114 N. C., 505, for reasons therein stated.    We can not say that retailing liquor is an enterprise for the public good and benefit.   If the defendant is allowed to continue selling (which, the evidence is, would be a great damage to the plaintiffs), and the plaintiffs should establish their alleged contract, it would be difficult and impracticable, from the inherent nature of the retail business, for them to ascertain their actual damage, and for these reasons we think the restraining order ought to be continued until the trial of the fact in dispute.

It is said in the argument that, as a bond to cover damages was required and given, the restraint should not continue, as the rule was laid down in *Commissioners of Burke Co. v. Catawba Lumber Co., supra.*   In that case the act complained of was injuring and destroying county bridges crossing the river, and the damage could be easily ascertained.    The Court refused to restrain the defendant's business upon condition that he file a sufficient and good bond to satisfy plaintiff's damages whenever they were ascertained.    The present case differs from that in the respect already mentioned, *i. e.,* the difficulty in ascertaining the damage.    The bond would

avail but little, if, in the nature of the subject-matter, the plaintiffs could not show their damage.

Error.

DOUGLAS, J., dissents.