CLARK, C. J., dissenting.
Action to restrain the defendant from engaging in the business of a fish dealer in Morehead City in violation of an agreement whereby the defendant agreed with the plaintiff, upon the plaintiff's (680) purchasing his business, good will and certain personal property, not to carry on, be concerned in or interested in said business of a fish dealer for a period of ten years, within one hundred miles of Morehead City. *Page 768 
The plaintiff was duly organized on 14 March, 1914, and the defendant, one of the incorporators, was elected a director, vice president and general manager of the plaintiff, and he has continued in these positions up to the commencement of this action.
Prior to 14 March, 1914, the fish business of Morehead City was conducted by seven different firms, composed of eleven individuals. These fish dealers operated boats about the waters of North Carolina, and did a large fish business in North Carolina, South Carolina, Georgia, and in the northern and eastern markets. They were the only fish dealers at Morehead City, except two; but there are now, since the organization of the plaintiff, as many fish dealers in Morehead City as there were at the time of the organization of the plaintiff.
On 12 March, 1914, all of said eleven fish dealers formed the plaintiff corporation, known as Morehead Sea Food Company, and upon the organization of the company each entered into a contract of sale with the plaintiff, by which he sold his business and good-will as a fish dealer to the plaintiff, and the personal property used in connection with his business, and in each bill of sale there was the following covenant:
"The vendor hereby covenants with the purchaser that they will not directly, indirectly, solely or jointly, as principal, agent, manager or otherwise, be concerned or interested in the same business heretofore carried on as aforesaid by them within the counties of Carteret and Craven, in the State of North Carolina, and within one hundred miles from the town of Morehead City, aforesaid, for ten years from the date hereof, nor permit their names to be used in connection with such business."
Upon the hearing of the motion to dissolve the restraining order theretofore issued, his Honor continued the order to the hearing, and the defendant excepted and appealed.
1. Is the agreement entered into between the plaintiff and the defendant a violation of the statute of this Statute enacted to prevent illegal trusts and combinations in restraint of trade?
2. If not, is the agreement unlawful under the common law? The (681) first question is answered by the statute (chapter 41, section 5, subsection F, Public Laws of 1913), wherein it is provided. "That nothing herein shall be construed to prevent a person, firm or corporation from selling his or its business and good will to a competitor, and agreeing in writing not to enter the business in competition *Page 769 
with the purchaser in a limited territory, as is now allowed under the common law."
The contract under consideration comes within the class described in the statute, and is authorized by it, unless condemned by the common law. We must then examine the principles of the common law applicable to contracts of this character.
In the early cases contracts in restraint of trade were very generally held to be void, as against public policy, upon the ground that they tended to lessen the opportunities of the party restrained to earn a livelihood and to deprive the community of the benefit of competition. 6 Ruling Case Law, 785. The distinction was, however, soon recognized between contracts in general restraint of trade, which were held invalid, and those in partial restraint of trade, which were sustained, if not unreasonable.
The changes that have taken place in the methods of doing business, and the increased opportunities for communication, and the enlarged facilities for transportation have also materially modified the views of the courts as to what is an unreasonable restraint upon trade. Many new industries, unknown to the ancient common law, have been developed, which makes it easier for one engaged in business to seek other employment when he has contracted to give up his old business, and this has reduced the hardship of such a contract upon the individual, and the danger to the community has been greatly reduced because of the increased opportunities to deal with distant communities.
The good-will of a business was soon regarded as an important and valuable interest, which the law would recognize and protect (20 Cyc., 1276), and while there is authority for the position that the sale of the good will of a business by implication will prevent the seller from prosecuting the same business in competition with the purchaser, the weight of authority seems to be that the purchaser can only protect himself fully by a written agreement upon the part of the seller to refrain from entering into the same business.
"Good faith requires of a party, who has sold the good will of a business, that he shall do nothing which tends to deprive the purchaser of its benefits and advantages. Upon a sale of the good-will of a business, without more, the vendor is not precluded from setting up a precisely similar business in the vicinity. Upon the authorities it is settled that, if the purchaser wishes to prevent this step from being taken, he must see to it that provisions to that effect are inserted in the (682) written contract." 20 Cyc., 1279.
This stipulation while primarily for the benefit of the purchaser, inures to the advantage of the seller by enhancing the value of the good-will, and while "public policy requires that every man shall be *Page 770 
at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill, or talent by any contract that he enters into, on the other hand, public policy requires that when a man has, by skill, or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and, in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case the same public policy that enables him to do this does not restrain him from alienating that which he wants to alienate, and, therefore, enables him to enter into any stipulation which, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract." 6 Ruling Case Law, 793.
There was also a tendency in the early cases to establish as the standard for determining the reasonableness of the contract, the duration of the contract as to time and the extent of the territory in which it was to operate; but under changed conditions, and in the effort to make the good-will a valuable asset, these tests have been abandoned, and the true test now generally applied is whether the restraint is such as to afford a fair protection to the interests of the party in whose favor it is given, and not so large as to interfere with the interests of the public. 16 A. and E. Anno. Cases, 254.
As said in Southworth v. Davison, 106 Minn. 110, "The rule, broadly stated, seems to be that no contract of this kind is void as being in restraint of trade when it operates simply to prevent a party from engaging or competing in the same business. Leslie v. Lorillard, 110 N.Y. 519." In other words, the good-will of a business being recognized as intangible property, which the owner may sell, and it being for the benefit of the seller that it should be sold for its full value, and it being necessary for the protection of the purchaser that the seller should not, after the sale, enter into competition with him, contracts restraining the seller from engaging in the same business are upheld, and they are not unreasonable if they go no further than to remove the danger to the purchaser of competition with the seller.
The opinion in Anchor Electric Co. v. Hawkes, 171 Mass. 101, contains a learned and instructive discussion of the question. In that case the business managers of three corporations agreed to form a new corporation, of which they were to be the officers and directors. (683) Each corporation was to sell its assets and good-will to the new corporation, and as a part of the contract of sale each corporation represented by the managers agreed that it would not in any way interfere with or compete with the business of the new corporation for a period of five years. *Page 771 
The contract was sustained, and, among other things, the Court said: "Whenever one sells a business, with its good-will, it is for his benefit, as well as for the benefit of the purchaser, that he should be able to increase the value of that which he sells by a contract not to set up a new business in competition with the old. The right to make reasonable contracts of this kind in connection with the sale of the good-will of many kinds of business is well established. But the particular provisions which are reasonably necessary for the protection of the good-will of many kinds of business are very different now from those required in the days of Queen Elizabeth. Then the courts had occasion to inquire whether a limitation upon the rights to engage in the same business as that sold was unreasonable because it included a town instead of a single parish, or extended a distance of ten miles instead of five. Now the House of Lords in England has held, by a unanimous decision in a recent case, that such a limitation which covered the whole world was not unreasonable. Because in early times it seemed inconceivable that an agreement to refrain from establishing a business of the same kind anywhere in the kingdom should be necessary to the protection of the good-will of any existing business, it was laid down as an arbitrary rule that agreements so comprehensive in their terms were void. Thus the distinction between a general restraint of trade and a partial restraint of trade grew up. Contracts applying to any territory less than the whole kingdom were considered in reference to their reasonableness, having regard to the purpose for which the contract was made. By the unanimous decision of the House of Lords, in the case ofNordenfelt v. Maxim Nordenfelt Guns and Ammunition Co. (1894), App. Cas., 535, affirming the unanimous judgment of the Court of Appeals in (1893) 1 Ch., 630, it is now held in England that a covenant unrestricted as to space, not to engage in a particular kind of business for twenty-five years, made in connection with the sale of the property of a manufacturing establishment, is valid, if, having regard to the nature of the business and the limited number of its customers, it is not wider than is necessary for the protection of the covenantee, nor injurious to the public interests of the country, as were found to be the facts, in that case."
Our Court has announced the same principle in Cowan v. Fairbrother,118 N.C. 412; Kramer v. Old, 119 N.C. 1; and in Shute v. Health,131 N.C. 282.
The Court said, in the first of these cases, speaking of the seller and the purchaser: "The one sells his prospective patronage and (684) the other buys the right to compete with all others for it, and to be protected against competition from his vendor. The law intends that the one shall have the lawful authority to dispose of his right to compete, but restricts his power of disposition territorially, so as to make it *Page 772 
only co-extensive with the right to protection on the part of the purchaser. To the extent that the contract covers territory from which the vendor has derived and will probably in future derive no profit or patronage, it needlessly deprives the public of the benefit of open competition in useful business, and of the services of him who sells without any possible advantage to his successor. When the reason upon which a law is founded ceases, the rule itself ceases to operate. The older cases in which the courts attempted to fix arbitrarily geographical bounds beyond which a contract to forbear from competition would not be enforced have given way to the more rational idea of making every case dependent upon the surrounding circumstances, showing the extent, as to time and territory, of the protection needed. . . . Where the nature of the business was such that complete protection would not be otherwise afforded, the restraint upon the right to compete has been held good in one or more cases where it applied to a State or to a boundary including several States," and in the second: "The courts in later years have disregarded the old rules by which it was sometimes attempted arbitrarily to fix by measurement the geographical area over which a contract in partial restraint of trade might be made to extend, and to prescribe a limit of time beyond which it could not be made to operate. The modern doctrine is founded upon the basic principle that one who, by his skill and industry, builds up a business, acquires a property at least in the good-will of his patrons, which is the product of his own efforts (Cowan v. Fairbrother, 118 N.C. 406), and has the fundamental right to dispose of the fruits of his own labor, subject only to such restrictions as are imposed for the protection of society, either by express enactments of law or by public policy. (Hughes v. Hodges,102 N.C. 239; Bruce v. Strickland, 81 N.C. 267.) But the property that one thus creates by skill, or talent and industry, is not marketable unless the owner is at liberty to sell his right of competition to the full extent of the field from which he derives his profits, and for a reasonable length of time. . . . The test of the reasonableness of the territorial limit covered by such contracts is involved in the question whether the area described in the contract is greater than it is necessary to make it in order to protect the purchaser from competition in his efforts to hold and to get the full benefits of the business or right of competition bought by him," and in the third: "Contracts in partial restrain of (685) trade can be made and enforced of common right. This Court said, in Kramer v. Old, 119 N.C. 1: `The modern doctrine is founded upon the basic principle that one who, by his skill and industry, builds up a business, acquires a property at least in the good-will of his patrons, which is the product of his own efforts, and has the fundamental right to dispose of the fruit of his own labor, subject only to *Page 773 
such restrictions as are imposed for the protection of society, either by express enactment of law or by public policy.' An indefinite restriction as to duration will not make such contract void. Kramer v. Old, supra. But there must be a definite limitation as to space; and the reasonableness of such limitation will depend upon the nature of the business and good-will sold. A contract, for instance, for a valid consideration not to engage in the manufacture of firearms in general use would be allowed to cover a larger extent of territory than would a contract not to engage in the manufacture of timber or the ginning of cotton. And the test of that reasonableness is whether the space or territory is greater than is necessary to enable the assignee to protect himself from competition on the part of the assignor, and thereby to get the benefits of what he has bought."
Applying these principles, we are of opinion that the contract is not illegal, as it is limited as to time, ten years, and it is not coextensive with the territory in which the defendant could enter into competition with the plaintiff, as the territory embraced in the contract is one hundred miles from Morehead City, and the field of competition extends to South Carolina, Georgia, and the northern and eastern markets.
It also appears that the plaintiff has not attempted to prevent others from engaging in the same business and that the public has not been deprived of the benefit of competition, as there are as many persons doing business as fish dealers in Morehead City now as at the time of the organization of the plaintiff company.
Affirmed.