THE MAR-HOF COMPANY, INC. v. ROSENBACKER ET AL.

(Filed 6 November, 1918.)

**1. Contracts—Restraint of Trade, Reasonable—Public Interests.**

Unless in violation of express and definite statutory provision, agreements in partial restraint of trade will be upheld when they are founded on valuable considerations and reasonably necessary to protect the interests of the parties in whose favor they are imposed, and do not unduly prejudice the public interest.

**2. Same.**

Transactions involving the sale and disposition of a business trade or profession between individuals with stipulations restrictive of competition on the part of the vendor do not, as a rule, tend to unduly harm the public and are ordinarily sustained to the extent required to afford reasonable protection to the vendee in the enjoyment of property or proprietary rights he has bought and paid for, and to enable a vendor to dispose of his property at its full and fair value.

**3. Same—Statutes.**

The common-law doctrine in its application to stipulations in restraint of trade, given them effect in certain instances as reasonable and not against public interests, is applicable to the interpretation of statutes on the subject where their terms are sufficiently indefinite to permit of interpretation.

**4. Same—Intent—Vendor and Purchaser.**

Our statute on the subject, preventing an agreement or understanding of the parties engaged in buying or selling anything of value, made "with the intent of preventing competition," by making the invalidity of the agreement depend upon the intent of the parties and not arbitrarily on the effect of the agreement, is sufficiently indefinite to permit of construction and disclose the legislative purpose to subject such agreements to the standard of their reasonableness, to be determined by the character of the transaction and the purpose of the parties, as disclosed in the contract and the facts and circumstances permissible and relevant to its correct interpretation. Laws of 1913, ch. 41; Greg. Supp., sec. 3028, sec. 5, sub-sec. f.

**5. Same—Breach of Contract—Damages—Counterclaim.**

A contract made in good faith between a vendor and purchaser of a certain particular make or character of a manufactured product that restricts the former from selling articles of the same make or kind to other dealers within the town wherein the purchaser conducts his mercantile business, and which requires the expenditure of large sums of money and much time in advertising the goods and popularizing them on the local market, does not come within the intent and meaning of chapter 41, Laws of 1913; and in the vendor's action for the purchase price the seller may recover damages as a counterclaim for breach of the seller's contract in that respect.

ACTION heard on appeal from Forsyth County Court and on demurrer to defendant's counterclaim before *Lane, J.,* at September Term, 1918, of FORSYTH.

The action was to recover the sum of $414.10 for goods sold and delivered.

Defendant answered, admitting the amount due, subject to some inconsiderable reductions specified, and further set up a counterclaim arising from breach of contract by plaintiff, in that plaintiff having agreed, for value, that plaintiff should, in Winston-Salem, have the exclusive sale of an article of plaintiff's manufacture, described as the Marhof middy suits, for the seasons of 1916 and 1917, in breach of said contract, placed a quantity of these suits with regular retail dealers in Winston-Salem, amount and place stated, whereby defendant's sales were diminished and profit lost to the amount of $750.

Plaintiff demurred on the ground that said answer and counterclaim set up an agreement in violation of our Anti-Trust Act, as set forth in Gregory's Supp., sec. 3028, sec. 5, subsec. f; Laws 1913, ch. 41. The demurrer having been sustained in the county court, the ruling was affirmed in the Superior Court, and defendant excepted and appealed.

*Craige & Vogler for plaintiff.*
*L. M. Swink for defendant.*

HOKE, J., after stating the case: Originally at common law, agreements in restraint of trade were held void as being against public policy. The position, however, has been more and more modified by the decisions of the Courts until it has come to be the very generally accepted principle that agreements in partial restraint of trade will be upheld when they are "founded on valuable considerations, are reasonably necessary to protect the interests of the parties in whose favor they are imposed, and do not unduly prejudice the public interest." Clark on Contracts (2d Ed.). The modification suggested has been approved and applied in numerous cases in this State where, on sale and disposition of a business, trade or profession, stipulations restrictive of competition on the part of the vendor have been held valid. Such deals between mere individuals do not, as a rule, tend to unduly harm the public and are ordinarily sustained to the extent required to afford reasonable protection to the vendee in the enjoyment of property or proprietary rights he has bought and paid for and to enable a vendor to dispose of his property at its full and fair value. *Bradshaw v. Milliken,* 173 N. C., 432; *Sea Food Co. v. Way,* 169 N. C., 679; *Kramer v. Old,* 119 N. C., 1; *Oregon Steam Nav. Co. v. Hinson,* 87 U. S., 64; *McCurry v. Gibson,* 108 Ala., 451; *Southworth v. Davidson,* 105 Minn., 119; *Herreshoff v. Bontineau,* 17 R. I., 3; *Diamond Match Co. v. Roeber,* 106 N. Y., 473; *Nordenfield v. Maxim App. Cases,* 1894, p. 535; Clark on Contracts, *supra;* 6 R. C. L., 793; 9 Cyc., 523-529.

In *Bradshaw v. Milliken, supra,* the doctrine as it now prevails with us is stated as follows: "Contracts in restraint of trade like the one we are now considering were formerly held to be invalid as against public policy, but the more modern doctrine sustains them when the restraint is only partial and reasonable. The test suggested by *Chief Justice Tindal* in *Horner v. Graves,* 7 Bing., 743, by which to determine whether the restraint is a reasonable one and valid is to consider whether it is only such as to afford fair protection to the interest of the party in whose favor it is given and not so large or extensive as to interfere with the interest of the public."

And in *Sea Food v. Way, supra,* the Court in its opinion quotes with approval from R. C. L., sec. 793, on the subject as follows: "Public policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill or talent by any contract that he enters into. On the other hand, public policy requires that when a man has, by skill or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case the same public policy that enables him to do this does not restrain him from alienating that which he wants to alienate, and, therefore, enables him to enter into any stipulation which, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract."

This doctrine of the common law as it now obtains, subjecting restrictive stipulations of this character to the test of right reason, has been applied to the interpretation of statutes on the subject where the terms are sufficiently indefinite to permit of construction, two notable instances being presented in the *Standard Oil* and *American Tobacco Co. cases,* 221 U. S., pp. 1 and 106. In the former of these cases, *Chief Justice White,* referring to the general terms of the Sherman Anti-trust Act, said, in part, "Thus, not specifiying, but undoubtedly contemplating and requiring a standard, it follows that it was intended that the standard of reason which had been applied at the common law and in this country in dealing with subjects of the character embraced by the statute. was intended to be the measure used for the purpose of determining whether, in a given case, a particular act had or had not brought about the wrong against which the statute provided."

In the State statute relied upon by plaintiff in avoidance of the alleged contract, Laws 1913, ch. 41, the portion of the act directly bearing on the question, sec. 5, subsec. f, provides, in effect, that it shall be unlawful for "any one engaged in buying or selling anything of value

in North Carolina to make or have any agreement or understanding,. express or implied, with any other person, firm or corporation or association, not to buy or sell such things of value within certain territorial limits within the State with the intent of preventing competition in selling or to fix the price or prevent 'competition in buying of said things of value within said limits," etc.

In thus making the invalidity of these agreements to depend upon the intent of the parties, and not arbitrarily on the effects of the agreement, the statute is sufficiently indefinite to permit of construction and discloses the purpose on the part of the Legislature to subject agreements coming under the provisions of this section to the standard of their reasonableness, to be determined by the character of the transaction and the purpose of the parties concerning it as disclosed in the contract and the facts and circumstances permissible and relevant to its proper interpretation.

This being the correct construction of the statute, it appears by the allegations of the answer, admitted to be true by the demurrer, for the purpose of presenting the question, that defendant, an established merchant in Winston-Salem, bought of plaintiff, a manufacturer of middy suits, desirous of introducing his goods into a new market, a large quantity of such middy suits, and in compliance with her agreement and as a part of the consideration, defendant had spent large sums of money and much time and effort in advertising the goods and popularizing them on the local market, and had lost heavily by plaintiff's breach of the agreement in placing designated quantities of the goods with other local dealers. On these facts, if accepted by the jury, we are of opinion that such a contract, made in good faith, does not come within the inhibition of the statute, and the demurrer should be overruled that defendant's counterclaim may be considered and passed upon.

We were cited by counsel to the case of *Fashion Co. v. Grant,* 165 N. C., 453, as an authority against our present decision, but in that case the contract came under another section of the statute and contained a stipulation that rendered it void by express and unequivocal terms of the portion of the law directly applicable.

There is error in overruling the demurrer, and this will be certified that the cause be proceeded with in accord with this opinion.

Reversed.