## SONOTONE CORPORATION v. CARL J. BALDWIN.

### (Filed 30 April, 1947.)

1. **Contracts §§ 11½ d, 7a—Acts of parties and amendment duly executed and signed after expiration of term of contract held readoption and extension of agreement for subsequent year.**

   The contract under which defendant was employed as plaintiff's district manager contained a covenant that defendant would not engage in business in competition with plaintiff for a period of one year after the termination of the contract, and stipulated that its term was for one year with provision for automatic renewal for not more than two additional years if defendant sold his quota. The parties continued to operate under this contract for four successive years, and three and one-half years after its execution executed an amendment signed by both parties. At the end of the fourth year defendant tendered his resignation in a letter signed by him as manager. *Held:* The contract was extended and was in force and effect for the fourth consecutive year, and in an action to enforce the covenant not to engage in business in competition with plaintiff during the fifth year, defendant's contention that the covenant was not in writing and signed by him as required by statute, G. S., 75-4, is untenable.

2. **Contracts § 7a—**

   In a contract of employment of a district manager for a specified territory, covenant that he should not engage in business in competition with the employer for a period of twelve months subsequent to the termination of the contract within the territory or a radius of fifty miles thereof is reasonably limited as to time and territory and affords no more than fair protection to the covenantee without injury to the interest of the public, and therefore the covenant is valid and enforceable. Dissimilitude of contracts arising out of the conventional relationship of master and servant is pointed out.

3. **Same—**

   While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect legitimate interests.

APPEAL by defendant from *Hamilton, Special Judge,* at January Extra Term, 1947, of MECKLENBURG.

Civil action to enjoin plaintiff's former District Manager from entering competitive employment in violation of his agreement.

The Sonotone Corporation has been selling hearing aids in the Carolinas for approximately 20 years and has built up a large demand for its products in this territory. The defendant, Carl J. Baldwin, is an expert in the audiomatric measurement of hearing loss and the proper fitting of hearing aids to compensate for such loss. He obtained his training in this field while working for the plaintiff.

In 1939 the defendant entered the employ of the plaintiff in the territory of the Carolinas. On 1 January, 1943, he agreed in writing to become Manager or District Manager for the sale of plaintiff's products in 40 counties in North Carolina and 9 contiguous counties in South Carolina. The defendant was given exclusive retail sales rights of plaintiff's products for one year, with provision that the contract should be deemed automatically renewed from year to year for not more than two additional years, if the defendant sold his annual quota. The defendant agreed to devote himself exclusively to the business of selling plaintiff's products and supplies.

It was further stipulated that "Upon the termination of this contract . . . the Manager agrees that he will not engage . . . in the business of manufacturing and/or selling any products or devices . . . in competition with the Manufacturer, or any agents or managers of the Manufacturer, either directly or indirectly as principal, or as agent or employee, in the Territory and within an area extending fifty (50) miles on every side thereof during a period of twelve (12) months from the date of termination."

The parties operated under this agreement for the first year and the two succeeding years. At the end of the third year on 31 December, 1945, the parties continued to operate in the same way without anything being said about a new contract. On 21 June, 1946, the following written stipulation was duly executed by the parties:

"June 21, 1946

"It is hereby mutually agreed that the territory outlined in clause number one of this contract be changed as of this date, to read as follows:

"Effective January 1, 1946, the minimum monthly sales quota outlined in clause number thirty-two, shall be $4,465.00 per mo.

"DEAN BOBBITT, President.
"F. W. BURNS, Assistant Secretary.
"CARL J. BALDWIN, District Manager
Sonotone of Charlotte.

"MRS. CARL J. BALDWIN,
Witness for the District Manager."

In September, 1946, the defendant began negotiations with one of plaintiff's competitors, Telex Corporation, and agreed to become Division Manager for this corporation, effective January 1, 1947, in nine states, including North and South Carolina.

Thereafter, on December 11, 1946, by letter duly signed by the defendant as "Mgr.," he tendered to the plaintiff his resignation as District Manager of the Charlotte territory to take effect at the end of the year, December 31, 1946.

On learning of defendant's contract with the Telex Corporation, the plaintiff instituted this action to enforce the restrictive covenant in its contract with the defendant.

A temporary restraining order was issued and this was continued to the hearing, limited, however, to the 49 counties mentioned in the contract.

From this order, the defendant appeals, assigning errors.

*Whitlock, Dockery & Moore for plaintiff, appellee.*
*Howard B. Arbuckle, Jr., for defendant, appellant.*

STACY, C. J.   On the hearing, the case was made to turn primarily on whether the restrictive covenant, here sought to be enforced, is in writing and signed by the defendant.   The statute provides that no contract or agreement limiting the right of any person to do business anywhere in North Carolina shall be enforceable unless such contract or agreement is in writing and duly signed by the party who agrees not to enter into any such business within the prescribed territory.   G. S., 75-4.

I. CHARACTER OF CONTRACT.

That the parties regarded their written contract of January 1, 1943, as being in full force and effect during the year 1946 is evidenced by the following:

1. From and after December 31, 1945, the parties continued their operations under the contract, each rendering the same services and proceeding as theretofore.  See, *Styles v. Lyon,* 87 Conn., 23, 86 Atl., 564; 35 Am. Jur., 454 and 460; 17 C. J. S., 318.

2. On June 21, 1946, the parties duly executed and signed an amendment to the contract.

3. On December 11, 1946, the defendant, by letter signed by him as "Mgr.," tendered his resignation as District Manager of defendant's Charlotte territory, effective December 31, 1946.

The effect of the memorandum of June 21, 1946, was to put in writing the mutual understanding of the parties that the written contract between them was still operative and to continue it in force as amended.   It was

signed by the defendant in his capacity as District Manager. His letter of resignation, written on December 11, was also signed by him as "Mgr." True, in this letter, the defendant speaks of "the absence of contract," but this would seem to be a contradiction in terms. He resigns as District Manager effective at a later date. He evidently regarded himself as District Manager at that time. Under what contract? Moreover, the defendant was then looking forward to his contemplated work with the Telex Corporation.

The defendant confidently cites, as controlling, the decision in *Jenkins v. King* (Ind., 1946), 65 N. E. (2d), 122, 163 A. L. R., 397, but that case was made to rest on a different principle. There, the extension of the contract by implication alone was all the plaintiff had to rely upon. Here, the parties readopted the contract and amended it by writing duly executed and signed on June 21, 1946.

## II. VALIDITY OF COVENANT.

There is no ambiguity in the restrictive covenant. It was inserted for the protection of the plaintiff, and to inhibit the defendant, for a limited time, from doing exactly what he now proposes to do. *Exterminating Co. v. Wilson, ante,* 96. The parties regarded it as reasonable and desirable when incorporated in the contract. Subsequent events, as disclosed by the record, tend to confirm, rather than refute, this belief. Freedom to contract imports risks as well as rights. Such a covenant is lawful if the restriction is no more than necessary to afford a fair protection to the covenantee and is not unduly oppressive on the covenantor and not injurious to the interests of the public. *Beam v. Rutledge,* 217 N. C., 670, 9 S. E. (2d), 471; *Matthews v. Barnes,* 155 Tenn., 110, 293 S. W., 993, 52 A. L. R., 1350; *Granger v. Craven,* 159 Minn., 296, 199 N. W., 10, 52 A. L. R., 1356; Anno. 98 A. L. R., 963.

Many of the authorities in this jurisdiction dealing with restrictive covenants are collected in the case of *Moskin Bros. v. Swartzberg,* 199 N. C., 539, 155 S. E., 154.

Perhaps it should be noted that cases arising out of the conventional relation of master and servant, or employer and employee, are somewhat different in their solution from the one here presented. Anno. 9 A. L. R., 1456. The controlling factors are dissimilar. A workman "who has nothing but his labor to sell and is in urgent need of selling that" may unwittingly accede to an unguarded restriction at the time of his employment, but one who is competent to serve as District Manager of a large corporation is supposed to understand and fully appreciate the significance of his engagements. While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect legitimate interests. It is as much a matter of public concern to see that valid engagements are observed as it is to frustrate oppressive ones.

The covenant here seems reasonable in its terms and purposes. It appears to meet the test of validity. *Grand Union Tea Co. v. Walker,* 208 Ind., 245, 195 N. E., 277, 98 A. L. R., 958, and note. It is reasonably limited both in respect of time and territory, which distinguishes it from *Comfort Spring Corp. v. Burroughs,* 217 N. C., 658, 9 S. E. (2d), 473. Likewise, *Kadis v. Britt,* 224 N. C., 154, 29 S. E. (2d), 543, 152 A. L. R., 405, is distinguishable in its factual situation.

In undertaking to change horses for what the defendant regards a better mount, he is reminded of his obligation to the steed which brought him safely to midstream and readied him for the shift. The purpose here is to call his attention to the matter.

No reversible error has been made to appear.

Affirmed.