WELCOME WAGON INTERNATIONAL, INC. v. EVELYN L. PENDER.

(Filed 7 July, 1961.)

**1. Pleadings § 12—**

   In passing upon a demurrer, the allegations of fact must be accepted as true.

**2. Contracts § 7—**

   Provisions in a contract of employment that after the termination of the employment the employee should not engage in business in competition with the employer are valid and enforceable provided the restrictions are reasonable both as to territory and time.

**3. Same—**

   While a contract of an employee not to engage in competition with the employer after the termination of the employment may not be reformed or modified by the courts in regard to the territory or time stipulated in the agreement in order to reduce them to that which is reasonable and enforceable, where the contract itself stipulates disjunctively territories of varying sizes, the court will take notice of the division the parties themselves have made, and will enforce the contract within a stipulated territory which is patently reasonable, in this case a single city.

**4. Same—**

   Where the employment entails personal contacts by the employee with the patrons or customers of the employer and the acquisition by the employee of information as to plans, methods, and procedures for the

conduct of the business, a provision in the contract of employment that the employee should not engage in business in competition with the employer within a prescribed territory for a period of five years after the termination of the employment cannot be held void on the ground that the period of time stipulated is unreasonable or excessive.

BOBBITT, J. dissenting.

PARKER and RODMAN, JJ., join in dissent.

APPEAL by plaintiff from *Bickett, J.,* December, 1960 Civil Term, CUMBERLAND Superior Court.

The plaintiff, a Delaware corporation, instituted this civil action (1) to restrain the defendant from further violating her covenant not to engage in the plaintiff's particular line of business for five years from the termination of her employment, and (2) to recover $3,500 liquidated damages resulting from breach of the restrictive covenant. The covenant was a part of the written contract of employment which, among other provisions, contained the following:

> "The Company employs the Hostess and the Hostess accepts the employment, to act for it in the capacity of Hostess in Fayetteville, North Carolina, and the surrounding trade territory;
> . . . .
> "The Company, through its duly authorized and trained members, will impart the required instructions and training to enable the Hostess to successfully operate the service according to the proven successful methods of operation and will supply the Hostess with printed, typewritten and mimeographed manuals, instruction books, and other literature for her guidance. The Company will also furnish sales presentations, sales letters and other material to assist in securing and retaining the patronage of prospective subscribers and will, through its paid Field Representatives, give personal sales and supervision assistance and through its trained correspondence staff will give every possible courteous and efficient cooperation and aid. . . .
> "The Hostess agrees to devote her entire time and attention to the business of the Company, and at all times work under its rules, regulations and instructions, and perform and discharge all the duties incident to said position as contemplated by the service which the Company is rendering to subscribers, and in accordance with the special training which she receives, among which duties will be to secure from all available sources and names of mothers and new-born babies; Girls who have reached their 16th birthday; Those whose engagements have recently been announced; Local Families moving from one home to an-

other; Newcomers moving into the city; and to call upon them and present gifts and literature from said subscribers to cooperate with said subscribers whom the Company is serving in every reasonable way so as to make the service rendered by the Company effective and efficient. She will lend her assistance in every reasonable way to building up the business and maintaining the service of the Company, and she will exert her efforts toward procuring prospective subscribers' contracts for the Company. . . .

"Now, therefore, for and in consideration of this employment, and the compensation to be earned and paid to the Hostess hereunder, said Hostess covenants and agrees that she will not during the term of this employment, and for a period of five whole years thereafter, engage directly or indirectly for herself or as agent, representative or employee of others, in the same kind or similar business as that engaged in by the Company (1) in Fayetteville, North Carolina, or (2) in any other city, town, borough, township, village or other place in the State of North Carolina, in which the Company is then engaged in rendering its said service, (3) in any city, town, borough, township, village or other place in the United States in which the Company is then engaged in rendering its said service, or (4) in any city, town, borough, township or village in the United States in which the Company has been or has signified its intentions to be, engaged in rendering its said service.

"Said Hostess also agrees that she will not, during the term of her employment by the Company, and for five whole years thereafter, divulge to any person, not an employee of the Company, any trade secret, plan or method of operation, or special information employed in or conducive to the Company's business, and which may come to her knowledge in the course of, or by reason of, her said employment.

"A breach of the foregoing good-will clause of this contract by the Hostess would result in substantial damages to the Company, but same might be incapable of exact proof. Therefore, if the Hostess should breach said clause, she will pay the Company, as liquidating damages, the sum of $3,500 for each and every city, town, borough, township, village, province or other place in which she commits said breach, it being agreed that the above sum is reasonable and fair. It is agreed and understood, however, that this provision for liquidated damages is cumulative and does not exclude the remedy by injunction or other remedy the Company may be entitled to."

The plaintiff alleged the defendant performed the contract until September 22, 1958, at which time she resigned. "That said business was successful and remunerative to the plaintiff," and for the years 1950 through 1958 the plaintiff received more than $55,000 from the business in Fayetteville.

The plaintiff further alleged:

> "That shortly after termination of her employment with the plaintiff, the defendant commenced a flagrant and systematic violation of the covenant and condition set forth in her said contract with the plaintiff and hereinabove set forth in that she entered into the same or similar kind of business to that of the plaintiff in Fayetteville, North Carolina, where she had been over a period of ten (10) years employed by the plaintiff and has continued to engage in the flagrant and systematic violation of said contract, employing the methods, plans and systems invented and used by the plaintiff and its predecessors in its business and imparted to the plaintiff in the course of her employment, and has used, and is using the knowledge she gained as to all of plaintiff's plans, methods, procedures and trade secrets for the purpose of establishing and operating an identical business of her own in the City of Fayetteville, North Carolina, in violation of the express terms and provisions of her contract with the plaintiff, under the style of 'Fayetteville Hospitality Service.'
>
> "That the defendant has also in an unfair manner approached all the subscribers or sponsors of the plaintiff in Fayetteville, North Carolina, who had contracts with the plaintiff and has solicited said sponsors to abandon their contracts with the plaintiff and to transfer their business to the defendant and has persuaded all of the customers, sponsors and subscribers of the plaintiff's business to leave the plaintiff and sign contracts with her."

The defendant filed a demurrer to the complaint upon two grounds: (1) The contract was without consideration. (2) It was void as against public policy for that the restrictions were unreasonable as to length of time and extent of territory. The court sustained the demurrer, entered judgment dismissing the action, from which the plaintiff appealed.

*Egbert L. Haywood, Emery B. Denny, Jr., of Haywood & Denny, for plaintiff, appellant, Walter P. Armstrong, of counsel.*

*Tally, Tally, Taylor & Strickland, By: Nelson W. Taylor and Jesse M. Henley, Jr., for defendant, appellee.*

HIGGINS, J.   In passing on the demurrer this Court must accept as true the facts alleged. Hence, for the purposes of the present hearing these facts are deemed established: (1) The parties entered into a written contract. (2) The mutual covenants furnished valuable consideration for it. (3) The defendant observed the terms of the contract for more than eight years during which the plaintiff received more than $55,000. (Whether this amount is the total, or the share of each party, is not clear.) (4) The defendant resigned effective September 22, 1958. (5) Immediately thereafter, all of plaintiff's customers cancelled their contracts. (6) The defendant immediately continued her operation as before except for herself rather for the plaintiff. (7) The defendant is now using the same methods and continuing the same operation in violation of the restrictive covenant in her contract.

The defendant admits the violation. She says, by way of her only defense, the contract is void because it is unreasonable as to time and territory. Our general rule is that the Court will enforce such a contract only if it is reasonable both as to the territory and the time limitations. In determining these questions the Court must take the contract as the parties made it. *Paper Co. v. McAllister,* 253 N.C. 529, 117 S.E. 2d 431; *Noe v. McDevitt,* 228 N.C. 242, 45 S.E. 2d 121.

The court is without power to vary or reform the contract by reducing either the territory or the time covered by the restrictions. However, where, as here, the parties have made divisions of the territory, a court of equity will take notice of the divisions the parties themselves have made, and enforce the restrictions in the territorial divisions deemed reasonable and refuse to enforce them in the divisions deemed unreasonable. It is patent that division (1) — Fayetteville — is not unreasonable. Likewise it appears that divisions (3) and (4) — any city or town in the United States in which the plaintiff is doing, or intends to do business — are unreasonable and will not be enforced. Whether (2) is reasonable is for the chancellor. "Where the territory embraced in restrictive covenants is unreasonable, but is expressed in divisible terms, i.e., in terms of local geographical or governmental units, the majority of the courts enforce the covenant in as many of the units as are reasonable and disregard the remainder." 26 N.C.L.R. (1947-48) p. 403, citing 5 Williston on Contracts, 1659 (Revised Ed. 1937-47 Cumulative Supplement); *Roane v. Tweed* (Del) 89 A. 2d 548; 41 A.L.R. 2d 1; *Welcome Wagon v. Haschert* (Ind.) 127 N.E. 2d 103; 17 C.J.S., Contracts, § 289 (a); *Hauser v. Harding,* 126 N.C. 295, 36 S.E. 586.

The defendant stressfully contends the time period (five years) after separation from the plaintiff's employment is unreasonable and renders the contract void. She relies heavily on *Welcome Wagon v.*

*Morris,* decided by the U. S. Court of Appeals for the Fourth Circuit and reported in 224 Fed. 2d 693. While there are minor factual differences between this and the *Morris* case, nevertheless we confine comment to the simple statement that, in our opinion, that decision does not follow the general rule and is not based on the sounder reasoning. The general rule is stated in 9 A.L.R., p. 1468: "It is clear that if the nature of the employment is such as will bring the employee in personal contact with patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons and customers of his former employer, and thereby gain an unfair advantage, equity will interpose in behalf of the employer and restrain the breach . . . providing the covenant does not offend against the rule that as to time . . . or as to the territory it embraces it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer." *Baumgarten v. Broadway,* 77 N.C. 8; *Baker v. Cordon,* 86 N.C. 116; *Cowan v. Fairbrother,* 118 N.C. 406, 24 S.E. 212; *Kramer v. Old,* 119 N.C. 1, 25 S.E. 813; *King v. Fountain,* 126 N.C. 196, 35 S.E. 427; *Hauser v. Harding, supra; Jolly v. Brady,* 127 N.C. 142, 37 S.E. 153; *Anders v. Gardner,* 151 N.C. 604, 66 S.E. 665; *Wooten v. Harris,* 153 N.C. 43, 68 S.E. 898; *Faust v. Rohr,* 166 N.C. 187, 81 S.E. 1096; *Sea Food Co. v. Way,* 169 N.C. 679, 86 S.E. 603; *Bradshaw v. Millikin,* 173 N.C. 432, 92 S.E. 161; *Mar-Hof Co. v. Rosenbacker,* 176 N.C. 330, 97 S.E. 169.

The foregoing cases in the main refer to covenants ancillary to contracts of sale, etc. See 36 Am. Jur., § 58, p. 537, *et seq.* The courts likewise recognize as valid contracts not to engage in competition with employer after termination of service. 36 Am. Jur., § 79, p. 555, *et seq.* In *Scott v. Gillis,* 197 N.C. 223, 148 S.E. 315, this Court held: "At least where the character of the business and the nature of the employment are such that the employer requires such protection, an agreement by an employee not to engage in business in competition with the employer after the termination of the employment, is valid if it is reasonable under the circumstances." The same rule is approved in *Moskin Bros. v. Swartzberg,* 199 N.C. 539, 155 S.E. 154. In *Comfort Spring Corp. v. Burroughs,* 217 N.C. 658, 9 S.E. 2d 473, the Court recognized, as valid, the rule in the *Scott* and *Moskin* cases but refused to restrain the defendant because of plaintiff's failure to allege sufficient material facts *Beam v. Rutledge,* 217 N.C. 670, 9 S.E. 2d 476; *Delmar Studios v. Goldston,* 249 N.C. 117, 105 S.E. 2d 277.

In the cases cited and others, restrictive covenants have been approved for periods ranging from one to 20 years, and in one instance for the life of the covenanter. For list of cases, see N.C.L.R., Vol. 38, p. 396 (1959-60). Research has not disclosed, and the defendant has not cited, any decision of this Court in which five years duration has been declared sufficient to avoid a restrictive covenant. According to the allegations, the plaintiff was established in business at the time the defendant executed the written contract and entered plaintiff's employment. She resigned after receiving the benefits for several years, began a competitive business immediately, and took with her all of plaintiff's customers. In short, she took over plaintiff's business. The actual result appears to furnish a valid reason for the covenant. "There is no ambiguity in the restrictive covenant. It was inserted for the protection of the plaintiff, and to inhibit the defendant, for a limited time, from doing exactly what he now proposes to do. *Exterminating Co. v. Wilson, ante,* 96. The parties regarded it as reasonable and desirable when incorporated into the contract. Subsequent events, as disclosed by the record, tend to confirm, rather than refute, this belief." *Sonotone Corp. v. Baldwin,* 227 N.C. 387, 42 S.E. 2d 352.

Upon the allegations of the complaint, which the proof may or may not sustain, the court should have overruled the demurrer, permitted the defendant to answer, and continued the restraining order to the hearing. The judgment of the court below is

Reversed.

BOBBITT, J., dissenting. The demurrer admits, solely for the purpose of testing the sufficiency of the complaint, plaintiff's factual allegations. Defendant's conduct, under the facts alleged, was and is in violation of the terms of the restrictive covenant. The only question for consideration is whether the restrictive covenant is valid and enforceable.

Covenants restricting employment tend to lessen the opportunity of the person so restricted to earn a livelihood and to deprive the community of the benefit of competition. *Sea Food Co. v. Way,* 169 N.C. 679, 86 S.E. 603. Such covenants "are looked upon with disfavor in modern law." *Kadis v. Britt,* 224 N.C. 154, 29 S.E. 2d 543. They are upheld only if founded on a valuable consideration, are reasonably necessary to protect the legitimate interests of the covenantee, do not impose unreasonable hardship upon the covenantor, and do not unduly prejudice the public interest. *Paper Co. v. McAllister,* 253 N.C. 529, 117 S.E. 2d 431, and cases cited; *Comfort Spring Corp. v. Burroughs,* 217 N.C. 658, 9 S.E. 2d 473; 17 C.J.S., Contracts § 254; 28 Am. Jur., Injunctions § 105; Restatement, Contracts § 516(f). To be

upheld, such a restrictive covenant must be reasonably limited both in respect of time and territory. *Sonotone Corp. v. Baldwin,* 227 N.C. 387, 42 S.E. 2d 352.

"Covenants by employees not to compete with their former employer are more carefully scrutinized by the courts, and relief more readily denied, than similar covenants ancillary to the sale of a business, since enforcement of the former may deprive the covenantor of the means of livelihood." 28 Am. Jur., Injunctions § 105; 17 C.J.S., Contracts § 254; 41 A.L.R. 2d 30-33; 43 A.L.R. 2d 111-115; Restatement, Contracts § 515, Comment b; 38 N.C.L.R. 399.

In *Kadis v. Britt, supra, Seawell, J.,* says: "From the beginning the argument against restraint of employment was—and still is—more powerful than those based on the evils of monopoly incident to restrictions in sales contracts." Ordinarily, in respect of sales contracts, the seller and the purchaser are in equal bargaining positions. The seller's covenant not to compete enables him to obtain full value for his business and good will. On the other hand, a prospective employee accepts employment on the terms offered or not at all. The prospective employee receives no additional compensation or benefit on account of the restrictive covenant he is required to execute.

While there is authority for the enforcement of a restrictive covenant *for such portion* of the stipulated time and *within such portion* of the stipulated territory *as the court may deem reasonable, Roane v. Tweed* (Del.), 89 A. 2d 548, 41 A.L.R. 2d 1, this Court is committed to the view that such a covenant must be upheld as written or not at all, that "it must stand or fall integrally." *Noe v. McDevitt,* 228 N.C. 242, 245, 45 S.E. 2d 121; *Paper Co. v. McAllister, supra.* Our rule, as stated in the majority opinion, is that "the Court must take the contract as the parties made it."

Covenants in *employment* contracts have been upheld by this Court where the restriction was for (1) three years, *Scott v. Gillis,* 197 N.C. 223, 148 S.E. 315, (2) two years, *Moskin Bros. v. Swartzberg,* 199 N.C. 539, 155 S.E. 154, (3) two years, *Exterminating Co. v. Wilson,* 227 N.C. 96, 40 S.E. 2d 696, (4) twelve months, *Sonotone Corp. v. Baldwin, supra.*

In *Beam v. Rutledge,* 217 N.C. 670, 9 S.E. 2d 476, the restrictive covenant was a provision in a partnership contract between plaintiff, an established eye, ear and throat specialist, and defendant, a newcomer to the community, in which defendant agreed, in the event of a dissolution of the partnership, that he would not practice medicine in Lumberton, or within one hundred miles of Lumberton, for a period of five years. This Court affirmed the continuance of a temporary restraining order to the final hearing.

The opinion of *Stacy, C.J.*, in *Beam v. Rutledge, supra*, includes the following: "It is not to be overlooked that cases arising out of the conventional relation of master and servant, or employer and employee, are not wholly applicable to a situation like the present. (Citation) The attendant circumstances are different. A workman 'who has nothing but his labor to sell and is in urgent need of selling that' may readily accede to an unreasonable restriction at the time of his employment without taking proper thought of the morrow, but a professional man who is the product of modern university or college education is supposed to have in his training an asset which should enable him adequately to guard his own interest, especially when dealing with an associate on equal terms.

"The line of demarcation, therefore, between freedom to contract on the one hand and public policy on the other must be left to the circumstances of the individual case. Just where this line shall be in any given situation is to be determined by the rule of reason. Of necessity, no arbitrary standard can be established in advance for the settlement of all cases."  .

"Enforceability of restrictive covenant, ancillary to employment contract, as affected by duration of restriction," is the subject of an exhaustive annotation appearing in 41 A.L.R. 2d 15-222. Restrictive covenants not to compete limited in duration to exactly five years were held reasonable in decisions cited and discussed on pages 199-207 and were held unreasonable in decisions cited and discussed on pages 207-211.

"Where the facts are established, reasonableness of restraint is a matter for the court." *Noe v. McDevitt, supra.* To determine whether the restrictions plaintiff sought to impose on defendant were reasonably necessary for the protection of plaintiff's legitimate interests and not unduly oppressive on defendant, the nature of their contractual relationship must be considered.

The covenants imposing restrictions on defendant constitute a major portion of the contract. In addition to those quoted in the statement of facts preceding the majority opinion, paragraph 10 of the contract provides:

> "10. It is understood and agreed that Thomas W. Briggs, of Memphis, Tennessee, the President and principal stockholder of this Company, is also operating as an individual under the trade name of The Welcome Wagon Service Company the same kind of service in all the Provinces in the Dominion of Canada. Therefore, as a further consideration for this employment, the Hostess covenants and agrees that she will not, during the term of this

employment, and for a period of five whole years thereafter, engage directly or indirectly, for herself or as representative or employee of others, in the same kind or similar business as that engaged in by the said Thomas W. Briggs individually, in any of the cities, towns, boroughs, townships or provinces in the Dominion of Canada."

The contract, while repeatedly referred to therein as an employment contract, does not establish the conventional relationship of employer and employee. Under its terms, the parties agreed to engage in a cooperative venture; and in this cooperative venture defendant, as indicated below, was required to bear the major portion of the financial risk.

Under the contract, defendant was obligated, *inter alia,* as follows:

1. To pay "all local expenses, including the cost of procuring names, telephone, automobile, stamps, printing of Mayor's letters and Hostess folders."

2. To procure "at her own expense, necessary standard call equipment; i.e., a basket attractively arranged to present the subscribers' gifts and literature."

3. To pay one-half of the amount of any license or privilege fee that might be required.

4. To provide an automobile for her use as a "Welcome Wagon," and to pay for the gas, oil and upkeep.

In full compensation for her services *and expenses,* defendant was to receive "a sum equivalent to 50% of the gross receipt *(sic)* from calls made by her, or 10% if made by her Assistant in the above described territory, said commissions to be payable monthly."

Under the contract, plaintiff's principal obligations were as follows:

1. To pay one-half of the amount of any license or privilege fee that might be required.

2. To supply defendant "with printed, typewritten and mimeographed manuals, instruction books, and other literature for her guidance"; to "furnish sales presentations, sales letters and other material to assist in securing and retaining the patronage of prospective subscribers"; to "give personal sales and supervision assistance" through "its paid Field Representatives" and its "trained correspondence staff."

In addition, plaintiff agreed to "keep the books, render statements, assist in collections, furnish all stationery, report forms, contract forms, survey analyses and all necessary research data" and to "supply the subscribers with especially prepared merchandising plans of application, sample customer control record forms and model sales letters for the subscribers' use."

Plaintiff alleges it gave defendant, at its offices and at its expense, a special course of instruction and training "for a period of ten days to two weeks." (Presumably, this was deemed a sufficient time for the proper instruction and training of a new hostess.)

The contract bears the legend, "KEY HOSTESS CONTRACT." Obviously, the success or failure of the venture depended upon defendant's personality, character, contacts, diligence, etc. Plaintiff was not obligated, unconditionally, to pay salary, wages or other compensation for defendant's services. Defendant was to receive 50% of the gross receipts of the venture and to pay therefrom all expenses incurred in connection with her activities. (Plaintiff's contribution was largely in the field of advice and guidance, for which plaintiff was to receive 50% of the gross receipts. Since defendant's efforts proved successful, the venture, until defendant's resignation, proved "highly remunerative" to plaintiff.)

This pertinent question arises: Is plaintiff seeking to retain such good will as it had before defendant became the Key Hostess in Fayetteville or is plaintiff seeking to capture and retain good will generated by defendant and largely, if not wholly, personal to her?

Plaintiff alleges its plan of operation is "novel and original." Even so, it is quite simple. Obviously, a person who had never been associated with plaintiff could easily and quickly acquire knowledge of all essential features of plaintiff's plans and methods of operation. A new hostess could be fully and quickly instructed and trained.

Plaintiff alleges defendant, in violation of the covenant, is now using plaintiff's "trade secrets" as well as its plans and methods of operation. The allegations do not suggest, even in a general way, the nature of plaintiff's so-called "trade secrets." "A trade secret is a new process, mechanism, or compound known only to its owner and those employees to whom it has necessarily been confided." 43 C.J.S., Injunctions § 148. Nothing of this sort is alleged or intimated. Indeed, the essential features of plaintiff's plans and methods of operation are now a matter of common knowledge.

Each party had the right to terminate the contract at anytime by giving two weeks notice. The covenant restricts defendant for "five whole years" without reference to the length of time the relationship under the contract continued.

Defendant's contract with plaintiff terminated September 22, 1958. This action was instituted October 26, 1960, more than two years thereafter. Plaintiff does not now have a hostess in Fayetteville.

The restriction is not limited to the solicitation by defendant of those who were subscribers to plaintiff's services while defendant was associated with plaintiff. It deprives defendant of the right to engage

in the same or similar kind of business as that in which plaintiff is engaged in the United States and in which Thomas W. Briggs, individually, is engaged in Canada.

Judge Bickett held the restrictive covenant void "for that the length of time, five years, after the employee leaves Welcome Wagon, is entirely too long to be reasonably necessary to protect Welcome Wagon and is unreasonably oppressive on the former employee, and that the territory covered in the Contract . . . is too vast and likewise unreasonable."

In *Welcome Wagon v. Morris*, 224 F. 2d 693, decided (1955) by the Court of Appeals of the Fourth Circuit, the present plaintiff sought to enforce a restrictive covenant almost identical to that now under consideration. The restrictive covenant was held void and unenforceable, because unreasonable in respect of both time and territory, when judged by the criteria established by North Carolina decisions.

I agree with Judge Bickett and the Court of Appeals that "five whole years" is entirely too long to be reasonably necessary to protect plaintiff's legitimate interests. It would be reasonable to restrict defendant from engaging in a competitive business in Fayetteville for such time as would be reasonably required to enable plaintiff to engage a new hostess, to give her sufficient instruction and training, to give her ample opportunity to contact the subscribers, and generally to establish and identify herself in the Fayetteville area as the Welcome Wagon Hostess. It would seem this could be accomplished, if at all, within three years or less. If defendant were restricted from engaging in a competitive business for a maximum of three years from the termination of her contract with plaintiff, this would seem sufficient to fully protect plaintiff's legitimate interests. In my opinion, to so restrict her for "five whole years" is unreasonable and harsh.

This Court has not upheld as reasonable a covenant restricting competition for five years after the termination of an employment contract. True, as stated in the majority opinion, no decision of this Court has declared a covenant in an employment contract void on the ground five years is an unreasonably long time. In my opinion, the factual situation here considered affords an appropriate basis for a positive declaration to that effect.

Moreover, I agree with Judge Bickett and the Court of Appeals that the territory covered by the restrictive covenant is too vast and likewise unreasonable.

The majority opinion, in upholding the restriction as to Fayetteville, applies in substance the so-called "blue pencil" rule. See Williston on Contracts, Revised Edition, Vol. V, § 1659. While simple and convenient, this rule, in my opinion, is unsound. Simply stated, the rule

as applied here is this: If defendant were restricted from competition with plaintiff throughout the United States and Canada, the restriction would be held wholly unreasonable and void and would not be enforced in Fayetteville; but if defendant is restricted from competition in Fayetteville *or* elsewhere in the United States and Canada, the restriction will be enforced in Fayetteville. In other words, if offered a choice of separately described territories, the court will enforce the restriction if it can find an alternative in respect of territory it deems reasonable; but the court will not, on its own initiative, designate what, within a larger boundary, constitutes a reasonable territory. Under this rule, legality is made to depend upon form rather than substance.

Under the "blue pencil" rule, the court will not divide territory but will divide what is essentially a single restrictive covenant. The restrictive covenant, according to its terms, applies to all territory described therein in exactly the same manner it applies to Fayetteville. Indeed, the provision as to liquidated damages if defendant should breach the "good-will clause" provides that plaintiff must pay "the sum of $3,500 for each and every city, town, borough, township, village, province or other place in which she commits said breach."

Too, if the "blue pencil" rule is adopted, there would seem no reason why the court should not uphold a provision it deems reasonable in respect of time if worded in the alternative, for example, a provision restricting competition (1) for one year, or (2) for two years, or (3) for three years, or (4) for four years, and so on *ad infinitum.*

In *Paper Co. v. McAllister, supra,* a similar factual situation was considered. McAllister, a salesman, was engaged exclusively in the sale and distribution of paper products. The covenant, for a period of three years after the termination of his contract, restricted him from engaging "in the manufacture, sale *or* distribution of paper or paper products within a radius of 300 miles of any office or branch of the Henley Paper Company or its subsidiary divisions." (Our italics) One ground on which the covenant was held unreasonable and void as imposing an undue hardship was that it restricted McAllister from engaging, directly or indirectly, in the *manufacture* of paper or paper products. I concurred in this view. There the restriction was phrased in the alternative. If we had applied the "blue pencil" rule, we would have disregarded the word "manufacture" and would have enforced the provision to the extent it related to sales and distribution.

In testing the reasonableness of a covenant restricting competition after termination of employment, the impact upon the employee so restricted should receive due consideration. The covenant, in its en-

tirety, hangs over him. He cannot foresee whether a court, at the end of protracted litigation, will enforce the covenant as written or only within a segment of the territory therein explicitly described. I am impressed by this dictum of *Lord Moulton* in *Mason v. Provident Clothing and Supply Company, Limited*, Law Reports, 1913 Appeal Cases 724, 745: "It must be remembered that the real sanction at the back of these covenants is the terror and expense of litigation, in which the servant is usually at a great disadvantage, in view of the longer purse of his master."

The majority opinion stresses the allegations of paragraph 26 of the complaint, *viz:*

> "26. That prior to the employment of the defendant in 1948, plaintiff had an established business in the City of Fayetteville, a good name and was performing a useful, valuable and praiseworthy service to the community of Fayetteville, North Carolina and certain of its merchants."

While the complaint alleges in detail the fees collected by plaintiff during the years 1949-1960, it contains no allegations as to the success or failure of plaintiff's business prior to 1949. Was plaintiff engaged in business in Fayetteville *immediately* preceding defendant's employment by or her association with plaintiff?

It will be observed that paragraph 26, quoted above, refers to the employment of defendant by plaintiff in *1948*. The contract is dated August 19, 1949. Paragraph 16 of the complaint alleges defendant entered into her duties *as hostess* of plaintiff in Fayetteville in the Fall of 1949. Paragraph 17 alleges defendant remained in the employment of plaintiff from the Fall of 1949 to the early part of September, 1958. It may be the reference in paragraph 26 to 1948 is an inadvertence. As plaintiff's allegations now stand, they indicate defendant was employed by plaintiff in 1948 but did not become hostess until the contract of August 19, 1949, was executed. Plaintiff's allegations suggest that the contract of August 19, 1949, was or may have been executed after defendant, under employment by or in association with plaintiff, had become thoroughly familiar with plaintiff's methods of operation. While I do not base my dissent on this ground, I suggest that, as the allegations now stand, the covenant in the contract of August 19, 1949, is or may be void for lack of consideration. *Kadis v. Britt, supra; Paper Co. v. McAllister, supra.*

For the reasons stated, I vote to affirm Judge Bickett's judgment.

PARKER and RODMAN, JJ., join in dissenting opinion.