THOMAS BRIGGS, Plaintiff, *v.* ESTHER GLOVER, Defendant.

Supreme Court, Special Term, New York County, February 28, 1938.

*Mackey, Herrlich & Breen* [*R. J. Mackey,* of counsel], for the plaintiff.

*Charles A. Gill,* for the defendant.

COTILLO, J.   In this action the plaintiff is endeavoring to obtain a permanent injunction to restrain the defendant, a former employee of the plaintiff, from engaging directly or indirectly in any business similar to or competitive with that of the plaintiff in the towns of Great Neck, Little Neck, Douglaston or in any city or town in the United States or Canada in which the plaintiff is engaged in rendering Welcome Wagon Service.

The plaintiff has been engaged for a number of years under the trade name of Welcome Wagon Service Company in rendering advertising service to various merchants by the distribution of their advertising to newcomers in the towns in which the plaintiff operated. He had engaged women, including the defendant, in each town whom he designated as hostesses to represent his company.   The business of such women was to solicit contracts from merchants for his service and distribute advertising matter of these merchants to newcomers.   They were paid on a commission basis, namely, one-half of the proceeds collected from such service in the place where they operated.   The employment of the defendant by the plaintiff was by means of a written contract.   Having been employed for a period of several months, the plaintiff and defendant on January 8, 1937, entered into a written contract wherein the defendant was employed to act as a field representative and supervisor of the plaintiff throughout Long Island.   This last contract contained a written negative covenant as follows:

" 3. It is understood and agreed that the plan of advertising through the means of a Welcome Wagon Service involves methods, system and trade usages, which party of the first part and its predecessors have had in general use for a long period of time and which have been developed and extended at great expense, with which methods, systems, plans and trade usages party of the second part, by virtue of this employment, will necessarily become acquainted; that the party of the first part has been, and is now, operating its service in different cities, towns, etc., throughout the United States and certain parts of the Dominion of Canada, and intends to introduce and operate its service in other cities, towns, boroughs, provinces and townships throughout the United States and Canada, as soon as it is practical so to do.   Now, therefore, for and in consideration of this employment and the compensation to be earned and paid to the party of the second part hereunder, the party of the second part covenants and agrees (which covenant and agreement is the essence of this contract) that upon the termination of this employment by the act of either party, she will not for a period of five whole years from the date of such termination, engage directly

or indirectly, for herself or as representative or employee of others, in the same kind or similar business of the party of the first part in Great Neck, L. I., and/or in any city, town, borough, township or other place in the United States and Canada, in which the party of the first part is then engaged in rendering its service."

The covenant also contained a clause providing for the duration of the contract and also providing for the method of termination by either party. This clause is as follows:

" 7. That pursuant to the provisions of the said contract between the parties, dated January 8, 1937, as aforesaid, it was provided that the employment thereby created would continue so long as it was the mutual desire of the parties, and that either party might terminate such employment by giving two weeks notice in writing to the other, and that the payment or tender to two weeks salary by the plaintiff to the defendant would be equivalent of two weeks written notice."

On March 18, 1937, the plaintiff in pursuance of the terms of this latter clause discharged the defendant. The defendant thereupon in her own name and on her own behalf entered into a business similar to the purpose of that of the plaintiff and in the same territory, and it is this action that the plaintiff now seeks to restrain. The defendant opposes upon the ground that the restrictive covenant is unfair, unreasonable and invalid. Covenants of this character have been upheld by our courts, namely in the case of *Interstate Tea Co.* v. *Alt* (271 N. Y. 76). In *Mutual Milk & Cream Co.* v. *Heldt* (120 App. Div. 795), that court, in granting an injunction in a case where a restrictive covenant was sought to be enforced, used the following language:

" It seems to me that the covenant upon which this action is based was an independent covenant and was entered into as a consideration of the employment, and that the injury and wrong which it was sought to guard against was within the contemplation of the parties at the time they entered into the contract, and was not dependable upon the manner of the defendant's leaving the employ of the plaintiff, but upon the fact of his leaving. * * * ' The terms imposed were not unusual or unreasonable. It was a perfectly proper condition for the plaintiff to insist upon as a condition of the employment or as a condition of the continuance thereof, that its employee should not, after becoming acquainted with its customers, leave its employ and solicit business for another in competition with it.' "

The proof in this case shows that this is a case in which the restrictive covenant should be enforced. A hostess (a class of

employee, including the defendant) is chosen for her personality and ability to make a favorable impression upon the public, and it is not a service which just anybody can render. She is trained by the company before she is actively engaged in her work for the company and is given a course of instruction in how her services are to be performed. The contacts of the plaintiff with its clients are made exclusively with the hostess, and in the event of the hostess severing her employment with the company and going into similar business results in unfair competition especially as the business of the plaintiff is a special type of business.

From all the evidence in this case, the court can arrive at no other conclusion but that the defendant after she terminated her employment under the contract of January 8, 1937, started out in business for herself, using the same methods and system and the same type of reports as the plaintiff used in its business. The plaintiff, under the trade name of the Welcome Wagon Service Company, is an established business and has been organized since 1928 and has extended its workings throughout the United States and Canada. The defendant, at the time of undertaking the employment, was fully aware of the contents of the contract which she was signing and the fact that it contained a negative covenant to refrain from competing or working for anybody else in this line of business for a period of five years. She had a day and night to read the contract and the evidence establishes that her husband read it with her before she attached her signature, and it seems to the court that this case is one in which the covenant should be enforced.

Judgment is, therefore, directed for plaintiff; decision signed; findings of fact and conclusions of law of the defendant passed upon. Settle judgment.