**WELCOME WAGON, Inc., a corporation, Plaintiff,**

v.

**Nancy Rankin MORRIS, Defendant.**

**Civ. A. No. 1024.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

March 18, 1955.

J. Spencer Bell, Charlotte, N. C., Robert H. Stickley, Memphis, Tenn., for plaintiff.

Mullen, Holland & Cooke, Gastonia, N. C., for defendant.

WARLICK, District Judge.

This is an action on the part of the plaintiff to restrain the defendant for the alleged breach of the terms of her contract with plaintiff. In addition to the restraint sought plaintiff originally demanded money damage, but on it being made to appear that the defendant was insolvent, such demand was withdrawn and the action was tried by the court, without a jury, solely upon the question of injunctive relief.

The hearing disclosed the following facts:

Welcome Wagon, Inc., a Delaware Corporation, is engaged in the advertising business and has done a similar work since 1928. It is authorized to do business in North Carolina. It has general offices in New York City, Memphis, Tennesee, and elsewhere, and operates in approximately twelve hundred cities, employing some 3,500 individuals who are designated as hostesses in a specialized business relations capacity. Its method of operation through the work of each hostess is for them, after their selection and employment, and a short period of training, to contact local merchants and

business men in their locality and solicit their sponsorship of the program and work thereunder in line with plaintiff's ideas. This method being that the hostess on occasion, when such is deemed necessary, contacts newcomers to the city, brides, newlyweds, mothers of new babies and others who would appreciate such attention and approach, and thereupon in that manner promote the interest of said merchants and those who sponsor the program, and presenting to those contacted small gifts and other tokens of appreciation, and extending words of welcome and greetings to the said newcomers to the community. The program further has to do with giving out literature, extending invitations from civic and religious organizations, and otherwise attempting through this friendly approach to create an atmosphere of good cheer and welcome and appreciation from the merchants and business men to those coming to the city. Nothing is sold in the merchandising sense, but each sponsor receives an amount of personal advertising by said contact and visits through the hostess and in the interest shown by her to those visited. Incidentally she would suggest that when the need appear, that the sponsors be patronized on account of their making her calls possible.

When plaintiff determines on a new city for its operation its method is to select from among those who apply for said position the most likely and available person as hostess and thereupon contracts with the one selected. A two weeks training period is required for each hostess and at her expense, and when such training period has ended the hostess then returns to her locality and undertakes to secure sponsors who are generally merchants and business men and if successful in getting a sufficient number of sponsors, puts the program into effect. Those who are selected as hostesses obviously are chosen on account of their grace and poise, social background, and ability to get things done, and likely other factors which would make them more valuable as hostesses in putting over program in hand. Each hostess is paid 50% of the gross revenue received from the sponsors and in North Carolina from the operations had in the approximately thirty cities and towns, plaintiff annually received in the neighborhood of $90,000.

On deciding to try Gastonia, plaintiff selected the defendant from among the applicants who applied for the position of hostess, and on January 28, 1947, entered into a contract with her, the material parts of which in so far as this action is concerned, are as follows:

"It is understood and agreed that the plan of advertising, through the means of the Welcome Wagon Service Company, and its subsidiaries under which said Thomas W. Briggs operates his various services, involves methods, systems and trade usages which the Company and its predecessors have had in general use for a long period of time, and which have been developed and extended at great expense, with which methods, systems, plans and trade usages, the Hostess, by virtue of this employment, will necessarily become acquainted; that the Company has been and is now operating its various services in different cities, towns, boroughs, townships, villages and provinces, throughout the United States and certain parts of the Dominion of Canada, and intends to introduce and operate said services in other cities, towns, boroughs, townships, villages and provinces throughout the United States and Canada, having populations of a thousand or more each, as soon as it is practical so to do. Now therefore, for and in consideration of this employment, and the compensation to be earned and paid to the Hostess hereunder, said Hostess covenants and agrees (which covenant and agreement is the essence of this contract), that she will not during the term of this employment, and for a period of five whole years thereunder, engage directly or indirectly,

for herself or as a representative or employee of others, in the same kind or similar business as that engaged in by the said Thomas W. Briggs, under the trade name of the Welcome Wagon Service Company and its subsidiaries, (1) in Gastonia, N. C., and or (2) in any other city, town, borough, township, village, province or other place in the United States or Canada in which said Thomas W. Briggs, under any of said trade names, is then engaged in rendering his said services, and/or (3) in any city, town, borough, township, village, province or other place in the United States or Canada in which said Thomas W. Briggs, under any of said trade names, has been or has signified his intention to be engaged in rendering his said services."

These terms being identical with all other contracts of employment that plaintiff has entered into with hostesses throughout the United States.

Following the execution of said contract the defendant went to Memphis, Tennessee where the training center was then located, and took the said two weeks course and on her return to Gastonia, through her ability and work, her position and her contacts, was able to secure fifty-two business men of said city who agreed to sponsor said program. On May 1, 1947 defendant began said work for plaintiff under her contract, and thereafter, continuing through the years until her resignation, ably and acceptably carried out her contract and produced well for the business men of the city who sponsored said program and incidentally met the ideas of plaintiff. Advertising methods fluctuate with the years. Time naturally changes older ideas, and continuing from the time of defendant's connection with her work various of the sponsors cancelled the program, so that on August 4, 1953, fourteen business houses remained as sponsors of the plaintiff who were secured by the defendant and whom she served as hostess. Nine of these paid

50¢ for each call made by the defendant as hostess; two paid 60¢ for each visit, and three each paid $1.25. A daily report was required to be furnished on the visits made each previous day.

On August 4, 1953, plaintiff notified its nine sponsors who paid 50¢ for each visit or call as was done by the defendant as hostess that the rate would be increased to 60¢ per visit by said hostess as of November 21, 1953. That sometime prior to November 21, 1953, the effective date of said increase all of the nine advertisers gave written notice to the plaintiff that they were cancelling their contracts effective immediately, on account of and for the reason of said rate increase, and likewise during said month the remaining five sponsors gave notice to plaintiff of the cancellation of their sponsoring contract. All cancellations being in line with the rights of the advertisers under the contract. Thereafter and on November 29, 1953, the defendant, being without sponsors, resigned from her position with the plaintiff, in line with the terms of her contract with it.

Following her resignation the defendant sought from her friends and relatives advice as to how she might now earn a living. She was virtually without funds and had little experience in the ways of the world which would be of aid in making a living, other than that as a public relations worker. She contacted her brother-in-law, A. H. Sims, President of Citizens National Bank of Gastonia and discussed her problem with him,—talked of going into the real estate and rental business, but soon gave that idea up on learning that this required not only experience but money and training, all of which she lacked. Whereupon she was employed at a small salary as a receptionist in the bank, and doing outside contact work, in conjunction with its various programs. From this beginning and within the next six to eight weeks the defendant was able to secure from many of those who had sponsored the advertising done by the plaintiff through the defendant as hostess, and others, cer-

tain work of a comparable type as done for the bank. Much of it was wholly different from her previous work as hostess, this being a direct selling job rather than advertising. It was rather singular that virtually all of the fourteen persons and firms who were last with plaintiff as its sponsors in Gastonia, testified for the defendant and clearly gave evidence that their employment of the defendant following her resignation and their cancellation of the contract was without any effort on the part of the defendant and wholly was the thought of their own head and mind.

The defendant is still doing this type of work and as the evidence indicates, has additionally made contracts with others.

That at the time of said cancellation and for some time prior thereto work similar to that done for plaintiff was being done in Gastonia by two other comparable companies and at a much less charge to the sponsors for each visit by their representatives.

That in each of the new employments made by defendant the type of work done by her is clearly distinguishable from that previously done and in no wise conflicts with the work done by defendant for plaintiff under the terms of the contract,—as is shown by the testimony of some eight or ten of those presently employing defendant.

I therefore conclude:

That the Court has jurisdiction of this cause, and

That the defendant has not breached her contract with plaintiff.

The plain truth of the matter is that plaintiff is wholly responsible for the things about which it now complains. Its notice of an increase in its charge to its sponsors, apparently was not well taken and brought about the cancellation of all nine of those to whom the notice of increase was sent. The remaining five shortly thereafter cancelled out and defendant was then left high and dry with no means of carrying on. What could she do? The answer is obvious;—

she quit, and then still trying to carry on as a means of livelihood, sought work that she could do. Her friends came to her aid. Her efforts were successful, and then, apparently feeling that it had been let down, the plaintiff instituted this law suit, seeking to restrain the defendant from the work that she was doing, and undertaking thereby to destroy her capacity to earn a living. It should not prevail. The injunctive relief sought by plaintiff is hereby denied. Defendant will recover costs.