**WELCOME WAGON, Inc., a corporation, Appellant,**

v.

**Nancy Rankin MORRIS, Appellee.**

**No. 7000.**

United States Court of Appeals
Fourth Circuit.

Argued June 16, 1955.

Decided July 26, 1955.

J. Spencer Bell, Charlotte, N. C. (Bell, Bradley, Gebhardt & Delaney, Charlotte, N. C., and Robert H. Stickley, Memphis, Tenn., on brief), for appellant.

James Mullen, Gastonia, N. C. (Mullen, Holland & Cooke, Gastonia, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Welcome Wagon, Inc., (hereinafter called Welcome Wagon) filed a civil ac-

tion, in the United States District Court for the Western District of North Carolina, against Nancy Rankin Morris (hereinafter called Morris), seeking to enjoin Morris from violating a covenant (contained in her contract of employment with Welcome Wagon) not to engage in the same business or a business similar to that of Welcome Wagon. The District Judge denied the injunctive relief sought by Welcome Wagon and Welcome Wagon has appealed to us.

From the opinion of the District Judge in this case, 129 F.Supp. 1, we quote:

"The hearing disclosed the following facts:

"Welcome Wagon, Inc., a Delaware Corporation, is engaged in the advertising business and has done a similar work since 1928. * * * It * * * operates in approximately twelve hundred cities, employing some 3,500 individuals who are designated as hostesses in a specialized business relations capacity. Its method of operation through the work of each hostess is for them, after their selection and employment, and a short period of training, to contact local merchants and business men in their locality and solicit their sponsorship of the program * * *. This method being that the hostess on occasion, when such is deemed necessary, contacts newcomers to the city, brides, newlyweds, mothers of new babies and others who would appreciate such attention and approach, and thereupon in that manner promote the interest of said merchants and those who sponsor the program, and presenting to those contacted small gifts and other tokens of appreciation, and extending words of welcome and greetings to the said newcomers to the community. The program further has to do with giving out literature, extending invitations from civic and religious organizations, and otherwise attempting through this friendly approach to create an atmosphere of good cheer and welcome and appreciation from the merchants and business men to those coming to the city. Nothing is sold in the merchandising sense, but each sponsor receives an amount of personal advertising by said contact and visits through the hostess and in the interest shown by her to those visited. Incidentally she would suggest that when the need appear, that the sponsors be patronized on account of their making her calls possible.

"When plaintiff determines on a new city for its operation its method is to select from among those who apply for said position the most likely and available person as hostess and thereupon contracts with the one selected. A two weeks training period is required for each hostess and at her expense, and when such training period has ended the hostess then returns to her locality and undertakes to secure sponsors who are generally merchants and business men and if successful in getting a sufficient number of sponsors, puts the program into effect. Those who are selected as hostesses obviously are chosen on account of their grace and poise, social background, and ability to get things done, and likely other factors which would make them more valuable as hostesses in putting over program in hand. Each hostess is paid 50% of the gross revenue received from the sponsors and in North Carolina from the operations had in the approximately thirty cities and towns, plaintiff annually received in the neighborhood of $90,000.

"On deciding to try Gastonia, plaintiff selected the defendant from among the applicants who applied for the position of hostess, and on January 28, 1947, entered into a contract with her, the material parts of which in so far as this action is concerned, are as follows:

" 'It is understood and agreed that the plan of advertising, through the

means of the Welcome Wagon Service Company, and *its subsidiaries* under which said Thomas W. Briggs operates his various services, involves methods, systems and trade usages which the Company and its predecessors have had in general use for a long period of time, and which have been developed and extended at great expense, with which methods, systems, plans and trade usages, the Hostess, by virtue of this employment, will necessarily become acquainted; that the Company has been and is now operating its various services in different cities, towns, boroughs, townships, villages and provinces, throughout the United States and certain parts of the Dominion of Canada, and intends to introduce and operate said services in other cities, towns, boroughs, townships, villages and provinces throughout the United States and Canada, having populations of a thousand or more each, as soon as it is practical so to do. Now therefore, for and in consideration of this employment, and the compensation to be earned and paid to the Hostess hereunder, said Hostess covenants and agrees (which covenant and agreement is the essence of this contract), that she will not during the term of this employment, and for a period of five whole years thereunder, engage directly or indirectly, for herself or as a representative or employee of others, in the same kind or similar business as that engaged in by the said Thomas W. Briggs, under the trade name of the Welcome Wagon Service Company and its subsidiaries, (1) in Gastonia, N. C., and or (2) in any other city, town, borough, township, village, province or other place in the United States or Canada in which said Thomas W. Briggs, under any of said trade names, is then engaged in rendering his said services, and/or (3) in any city, town, borough, township, village, province or other place in the United States or Canada in which said Thomas W. Briggs, under any of said trade names, has been or has signified his intention to be engaged in rendering his said services.'

"These terms being identical with all other contracts of employment that plaintiff has entered into with hostesses throughout the United States.

"Following the execution of said contract the defendant went to Memphis, Tennessee, where the training center was then located, and took the said two weeks course and on her return to Gastonia, through her ability and work, her position and her contacts, was able to secure fifty-two business men of said city who agreed to sponsor said program. On May 1, 1947 defendant began said work for plaintiff under her contract, and thereafter, continuing through the years until her resignation, ably and acceptably carried out her contract and produced well for the business men of the city who sponsored said program and incidentally met the ideas of plaintiff. * * * various of the sponsors cancelled the program, so that on August 4, 1953, fourteen business houses remained as sponsors of the plaintiff who were secured by the defendant and whom she served as hostess. Nine of these paid 50¢ for each call made by the defendant as hostess; two paid 60¢ for each visit, and three each paid $1.25. A daily report was required to be furnished on the visits made each previous day.

"On August 4, 1953, plaintiff notified its nine sponsors who paid 50¢ for each visit or call as was done by the defendant as hostess that the rate would be increased to 60¢ per visit by said hostess as of November 21, 1953. That sometime prior to November 21, 1953, the effective date of said increase all of the nine

advertisers gave written notice to the plaintiff that they were cancelling their contracts effective immediately, on account of and for the reason of said rate increase, and likewise during said month the remaining five sponsors gave notice to plaintiff of the cancellation of their sponsoring contract. All cancellations being in line with the rights of the advertisers under the contract. Thereafter and on November 29, 1953, the defendant, being without sponsors, resigned from her position with the plaintiff, in line with the terms of her contract with it.

"Following her resignation the defendant sought from her friends and and relatives advice as to how she might now earn a living. She was virtually without funds and had little experience in the ways of the world which would be of aid in making a living, other than that as a public relations worker. She contacted her brother-in-law, A. H. Sims, President of Citizens National Bank of Gastonia and discussed her problem with him,—talked of going into the real estate and rental business, but soon gave that idea up on learning that this required not only experience but money and training, all of which she lacked. Whereupon she was employed at a small salary as a receptionist in the bank, and doing outside contact work, in conjunction with its various programs. From this beginning and within the next six to eight weeks the defendant was able to secure from many of those who had sponsored the advertising done by the plaintiff through the defendant as hostess, and others, certain work of a comparable type as done for the bank. Much of it was wholly different from her previous work as hostess, this being a direct selling job rather than advertising. It was rather singular that virtually all of the fourteen persons and firms who were last with plaintiff as its sponsors in Gastonia, testified for the defendant and clearly gave evidence that their employment of the defendant following her resignation and their cancellation of the contract was without any effort on the part of the defendant and wholly was the thought of their own head and mind.

"The defendant is still doing this type of work and as the evidence indicates, has additionally made contracts with others.

"That at the time of said cancellation and for some time prior thereto work similar to that done for plaintiff was being done in Gastonia by two other comparable companies and at a much less charge to the sponsors for each visit by their representatives.

"That in each of the new employments made by defendant the type of work done by her is clearly distinguishable from that previously done and in no wise conflicts with the work done by defendant for plaintiff under the terms of the contract,—as is shown by the testimony of some eight or ten of those presently employing defendant.

"I therefore conclude:

"That the Court has jurisdiction of this cause, and

"That the defendant has not breached her contract with plaintiff."

It is thus clear that the District Judge decided this case in favor of Morris on the sole ground that the type of work done by her since she left Welcome Wagon "is clearly distinguishable from that previously done (for Welcome Wagon) and in no wise conflicts with the work done by defendant for plaintiff under the terms of the contract."

█ With this finding of the District Judge we cannot agree. On the contrary, we think the finding is clearly erroneous and the work now being done by Morris is, in the words of the restrictive covenant, "the same kind or similar business." True it is that there are some variations in the two types of work or

businesses; but we think these variations (e. g. that Morris now acts more as a selling agent and less as a welcomer than when she was with Welcome Wagon) are trifling rather than essential. A careful study of the record, and especially the testimony of Morris herself, is to us very convincing on this point.

This brings us to the question (not considered by the District Judge below) of the validity of the restrictive covenant of employment contained in the contract between Welcome Wagon and Morris. One of the most elaborate opinions in this field is that of Judge Hoover (Court of Common Pleas of Ohio, Cuyahoga County, 1952), Arthur Murray Dance Studios of Cleveland v. Witter, 105 N.E. 2d 685, 687, covering twenty-seven printed pages. As Judge Hoover said in that opinion: "This is not one of those questions on which the legal researcher cannot find enough to quench his thirst. To the contrary there is so much authority it drowns him." He then cites voluminous authorities under seven seas: the periodical sea, the sea of annotations, the sea of encyclopedias, the sea of treatises, the restatement sea, the digest sea and Ohio's own sea.

Such contracts were regarded with high disfavor under the old common law. And they are so regarded, in general, by modern courts, though apparently with some amelioration of the ancient disfavor. Modern courts have usually, in passing on these contracts, employed three criteria: (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood? (3) Is the restraint reasonable from the standpoint of a sound public policy.

Since the law of North Carolina is controlling here we discuss briefly some of the most important North Carolina cases in this field. These cases appear to follow the general current of modern American authority.

In Scott v. Gillis, 197 N.C. 223, 148 S.E. 315, plaintiff-employer and defendant-employee were engaged in the business of certified public accountants. The employee covenanted not to solicit or accept any accounting business from the employer's customers for three years after he left the employ of the plaintiff. The court upheld the covenant, pointing out (by quoting from other authorities) that it was reasonable as to the parties and that without it few professional men would hire assistants and entrust them with any knowledge of the business.

In Moskin Bros. v. Swartzberg, 199 N.C. 539, 155 S.E. 154, defendant-employee was the manager of plaintiff-employer's retail clothing store in High Point, North Carolina. The restrictive covenant provided that he would not become involved in a similar business in High Point for two years following the termination of his employment with the employer. The employee violated the clause by working for a competitor. The court held that the covenant was valid. The employee's knowledge of the business and personal association with the employer's customers were held to justify the clause as reasonable in connection with time and place.

In Orkin Exterminating Co. v. Wilson, 227 N.C. 96, 40 S.E.2d 696, defendant-employee was manager of the plaintiff-employer's exterminating business in and around Winston-Salem, comprising thirteen counties in North Carolina. The restrictive covenant specified that the employee was neither to solicit the employer's customers nor engage in the pest control business in such territory for a two year period after his employment ceased. There was evidence of a violation as to both aspects of the covenant. The court upheld the covenant, commenting on the similarity between this case and that of Moskin Bros. v. Swartzberg, supra. The covenant was

held to be reasonable in its terms and not unreasonable as to time or territory.

In Sonotone Corporation v. Baldwin, 227 N.C. 387, 42 S.E.2d 352, defendant-district manager sold plaintiff-manufacturer's product (hearing aids) throughout forty-nine counties in the Carolinas. The restrictive covenant covered these counties for a period of one year after the termination of the employment. The court upheld the covenant as being reasonable for the employer's protection and not unreasonable as to the employee. It was also noted that this case was to be distinguished from the cases arising out of the ordinary employer-employee relationship. The district manager is supposed to understand the significance of his engagements, whereas an ordinary employee should not be held to such a degree of understanding.

In Comfort Spring Corp. v. Burroughs, 217 N.C. 658, 9 S.E.2d 473, defendant-employee, apparently a salesman, covenanted, inter alia, not to work for a certain competitor anywhere in the United States for a five year period after the termination of his employment with plaintiff-employer. The covenant was breached, but the court held that the covenant was void because it was unreasonable in territorial extent. It was held to be unnecessary to protect the business of the employer and unreasonable and oppressive upon the employee.

In Kadis v. Britt, 224 N.C. 154, 29 S.E. 2d 543, 152 A.L.R. 405, defendant-employee drove a delivery truck and collected bills for the plaintiff-employer whose business was that of a retail clothing dealer in Wayne County, North Carolina. The restrictive covenant was made during the course of employment, and the court ruled that there was no consideration for it. The covenant provided that the employee and the members of his family would not engage in, or work for, a similar business for two years in Wayne County. The court declared that the covenant was unreasonable in that it afforded too much protection to the employer's business and it was, therefore, unreasonable to impose

its burden on the defendant. The contract in question was so unjust as to cause the court to describe it as placing the employee in a state of peonage.

In Noe v. McDevitt, 228 N.C. 242, 45 S.E.2d 121, defendant-employee was a salesman for the plaintiff-employer in North and South Carolina. The business concerned the sale of beauty and barber supplies. The employee's sales were made in eastern North Carolina. The restrictive covenant provided, inter alia, that the employee would not work as a salesman for any company in a similar business for a period of five years following termination of the employment in question. The territory covered in the covenant was North and South Carolina. The court held the covenant void on the grounds (1) that the territory covered was too extensive to be considered reasonably necessary for the protection of the employer's business, and (2) that it was an unreasonable restraint on the employee.

■ Under these North Carolina cases, as we interpret them, the restrictive covenant of employment before us is void and unenforceable, when judged by the criteria which have been formerly set out in this opinion. The length of time, five years, after the employee leaves Welcome Wagon, is entirely too long to be reasonably necessary to protect Welcome Wagon and is unreasonably oppressive on the former employee. The territory covered is too vast:

> "(1) In Gastonia, N. C., and or (2) in any other city, town, borough, township, village, province or other place in the United States or Canada in which said Thomas W. Briggs, under any of said trade names, is then engaged in rendering his said services, and/or (3) in any city, town, borough, township, village, province or other place in the United States or Canada in which said Thomas W. Briggs, under any of said trade names, has been or has signified his intention to be engaged in rendering his said services."

Welcome Wagon now operates in 1,200 cities and might extend its operations (during the five-year period) to many other cities. The type of employment forbidden by the covenant is certainly expansive: "the same kind or similar business as that engaged in by the said Thomas W. Briggs under the trade name of the Welcome Wagon Service Company and its subsidiaries."

There are three decisions of courts of record that construe covenants restricting activities of former employees of Welcome Wagon. The covenants differ slightly in each case, but all are materially the same as the covenant involved in the instant case. Two courts enforced the covenant and one court refused enforcement; we agree with the conclusion of the latter. First we shall consider the two cases enforcing the covenant.

In Briggs v. Butler, 140 Ohio St. 499, 45 N.E.2d 757, the employee was a hostess for Welcome Wagon in Toledo, Ohio. The contract contained a five year covenant substantially the same as the one involved here. The hostess quit Welcome Wagon and went to work for her husband in a competing business in Toledo. The Court granted the requested injunction on the general theory that the covenant was reasonable in its protection of Welcome Wagon's business and did not unreasonably restrict the rights of the former hostess. The Court seemed to be impressed by the argument that a Welcome Wagon hostess gains access to some rather important and confidential information and training during her employment, and that a restriction on the competitive use of this experience by an ex-hostess is necessary for the protection of Welcome Wagon. The Court did not consider or discuss the equitable rights of the hostess in any detail.

In Briggs v. Glover, 167 Misc. 306, 3 N.Y.S.2d 979, the Court enforced the restrictive covenant, relying mainly upon the same class of considerations advanced in the Butler case, supra. In this case, however, the employee was not a hostess but was a field representative and supervisor for Welcome Wagon, in Long Island, New York. The employee was discharged and immediately entered into the same type of employment in Long Island. The main considerations advanced for enforcing the covenant were that Welcome Wagon had given the employee some unique training and that a refusal of enforcement would result in unfair competition, since Welcome Wagon's business was so heavily dependent upon the employee's contact with the public and the sponsors.

In Briggs v. Boston, D.C., 15 F.Supp. 763, the one case refusing enforcement, the hostess left Welcome Wagon and went to work in the same territory, Cedar Rapids, Iowa, for a local competitor of Welcome Wagon. The services performed by the hostess in the new job were identical to the services she had performed for Welcome Wagon, with one exception: in the second position, the hostess did not contact or solicit any of the "sponsors" but merely performed public contact work for sponsors already secured by her new employer. Some emphasis was placed on this factor by the Court but it does not seem to be the crux of the case. The basis of the Court's decision seems to be its feeling that Welcome Wagon could easily obtain other persons capable of performing hostess services, that Welcome Wagon had not taught the hostess anything unusual and that Welcome Wagon's covenant would have restricted activities that would not have been harmful to it. For these reasons the covenant was deemed not to be reasonably necessary for the protection of Welcome Wagon, and an enforcing injunction was refused. The Court, also, felt that the basic employment contract was somewhat oppressive, and seemed to be favorably disposed towards the hostess because her efforts alone had built up the business for Welcome Wagon. The Court rejected the argument that competition from this particular hostess was peculiarly damaging because of her allegedly unusual business

capabilities. The Court felt that any normal person could, and would, have done as well as she did as a Welcome Wagon hostess. The injunction was refused since United States District Judge Scott held that enforcement was not reasonably necessary for the protection of Welcome Wagon's business.

The reported cases in this field are, as we have already indicated, indeed multitudinous. We content ourselves with the citation of a few representative cases: Briggs Co. v. Mason, 217 Ky. 269, 289 S.W. 295, 52 A.L.R. 1344; Wark v. Ervin Press Corporation, 7 Cir., 48 F.2d 152; Becker College of Business Administration and Secretarial Science v. Gross, 281 Mass. 355, 183 N.E. 765; Haysler v. Butterfield, 1949, 240 Mo.App. 733, 218 S.W.2d 129; International Mut. Fire Insurance Co. v. Carrington, 241 Ill.App. 208; Athletic Tea Co. v. Cole, Mo.App.1929, 16 S.W.2d 735; Grand Union Tea Co. v. Walker, 208 Ind. 245, 195 N.E. 277, 98 A.L.R. 958; McCluer v. Super Maid Cook-Ware Co., 10 Cir., 62 F.2d 426; Byers v. Trans-Pecos Abstract Co., Tex.Civ.App.1929, 18 S.W.2d 1096; Scadron's Sons v. Susskind, 132 Misc. 406, 229 N.Y.S. 209; Ward Baking Co. v. Tolley, 222 App.Div. 653, 225 N.Y.S. 75; Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32; Capital Laundry Co. v. Vannozzi, 1933, 115 N.J.Eq. 26, 169 A. 554; Comfort Spring Corp. v. Burroughs, 217 N.C. 658, 9 S.E.2d 473; Brown v. Williams, 166 Ga. 804, 144 S.E. 256.

■ Even if the restrictive covenant be not void, so that a suit at law for damages arising out of a breach of the covenant might lie, we think this covenant here might fairly be characterized as harsh and oppressive. And equity is slow to enforce such contracts through its extraordinary remedies such as specific performance and injunction, remedies that normally rest in the sound discretion of the trial judge. Nor do we think that Welcome Wagon here has suffered anything even approaching irreparable damage.

In the thriving city of Gastonia, there must have been many personable women who could have successfully filled the role of hostess for Welcome Wagon. Again, there were no deep trade secrets and no highly confidential information was given by Welcome Wagon to Morris. The distinctive technique (if such it be) employed by these hostesses of Welcome Wagon was well and widely known. She was not a top executive (a point stressed in many of the cases) but a rather humble employee in a vast army of women whom Welcome Wagon employed in a similar position.

■ Finally, counsel for Welcome Wagon contend that if we hold (and we have so held) that the restrictive covenant, taken in its entirety, is void, we might treat this covenant as separable into parts, that we might hold it valid in so far as this covenant applies to the City of Gastonia, and that we might enjoin Morris from pursuing her present activities in Gastonia. We cannot agree with this suggestion. We think the restrictive covenant must be judged as a whole and must stand or fall when so judged.

We find nothing in the authorities cited by counsel for Welcome Wagon that militates against this view. See, Moskin Bros. v. Swartzberg, 199 N.C. 539, 155 S.E. 154; Wooten v. Harris, 153 N.C. 43, 68 S.E. 898; Hauser v. Harding, 126 N.C. 295, 35 S.E. 586. See, also, Briggs Co. v. Mason, 217 Ky. 269, 289 S.W. 295, 52 A.L.R. 1344; 17 C.J.S., Contracts, § 289, p. 676. For further discussion of this subject see Williston on Contracts, §§ 1659, 1660; Restatement of Contracts, § 518; John T. Stanley Co. v. Lagomarsino, D.C.S.D.N.Y., 53 F.2d 112, 115.

For the reasons hitherto set out in this opinion, the judgment of the District Court is affirmed.

Affirmed.